STATE v. JOE LIBBY.

(Filed 25 May, 1938.)

**1. Intoxicating Liquor § 9b—**

The presence of empty whiskey bottles around a defendant's store and filling station constitutes some evidence that whiskey had been consumed on the premises and tends to assist in establishing that defendant possessed whiskey for the purpose of sale.

**2. Intoxicating Liquor § 9c—Evidence of illegal possession of intoxicating liquor for purpose of sale held sufficient for jury.**

Evidence that over a gallon of whiskey in pint bottles with unbroken seals was found on defendant's premises, that defendant admitted owning the whiskey, and that empty whiskey bottles were found around premises, *is held* sufficient to be submitted to the jury on a charge of illegal possession of intoxicating liquor for the purpose of sale. Ch. 49, Public Laws of 1937, N. C. Code, 3379, 3411 (j).

APPEAL by defendant from *Harding, J.,* and a jury, 6 December, 1937, Special Criminal Term, of GUILFORD. No error.

The defendant was arrested on a warrant duly sworn out charging him "That at and in said county of Guilford, Morehead Township, on or about 15 September, 1937, Joe Libby did unlawfully, willfully and feloniously (have) possession of eleven pints of taxed paid whiskey for the purpose of sale, contrary to the form of the statute and against the peace and dignity of the State."

The defendant was tried, convicted and sentenced in the municipal court on the warrant and appealed to the Superior Court. The defendant was tried before a jury in the Superior Court and found guilty, judgment was pronounced that defendant be confined in the common jail of Guilford County for a period of eight (8) months to be assigned to work under the supervision of the State Highway and Public Works Commission, as provided by law. From the judgment defendant appealed to the Supreme Court.

The evidence on the part of the State tended to show that defendant had a place of business, selling cold drinks, sandwiches and beer on the High Point Road near Greensboro, N. C. He had a double and single cabin for tourists. The building consisted of four rooms and the kitchen. The sheriff, deputy sheriff and another, with a search warrant, went to the defendant's place of business. The defendant was there. O. D. Apple, deputy sheriff, testified that when he went in the back door two girls were standing in the kitchen near the sink. They were working there. One of them put something in the sink. The sink had water in it and contained cooking utensils, pans, etc. In a washstand drawer in

STATE *v.* LIBBY.

a cabin, about 12 feet from the main building, were found four pints of branded whiskey on which the seal had not been broken nor cap removed. In going back to the kitchen one of the girls was pretending to be washing some pans and things, he ran his hand in the water and found a pint of Calvert whiskey. In the yard near the back door was a car, claimed by one of the girls working for defendant. There were found six pints in the dash-door pocket of the car. In the back of the grounds there were found a number of empty pint bottles, liquor bottles of different brands, Calvert, Crab Orchard, Cream of Kentucky, Wilkens Family, and any number of empty bottles found on the grounds, some of which showed to be fresh and some to have been there some time. The two girls stated in defendant's presence that they were working for him and lived in one room in the double cabin—the room in which four pints of whiskey were found. The defendant stayed in the single cabin located five or six feet from the double cabin.

The witness Apple testified further: "After we found all of the whiskey and got through searching and the two girls came in and claimed part of the whiskey, Mr. Phipps and Mr. Ballinger and myself told them all three to get ready to go, that they were under arrest, that if they had any dressing to do to get ready, that we would have to take them up and demand a bond for them. At that time Joe Libby spoke up and said, 'There is no need of that.' I said, 'Joe, all I can do is what they said. They said part of the liquor belonged to them and you operate the place here.' He said, 'I will claim all of the liquor. It was mine.' I said, 'Do you want to sign a written statement to that effect?' and he said he would and I wrote out the statement and he signed it. . . . Q. What statement, if any, did the defendant make with reference to the ownership of the liquor? Ans.: As I said a bit ago, he stated the whiskey was his. Q. You testified the defendant signed a statement—is this the statement he signed (showing witness paper)? Ans.: Yes, sir."

The statement was as follows: "I Joe Libby hereby admit that all eleven (11) pints of whiskey found on premises belong to me and girls have nothing to do with it. (Signed) Joe Libby. Witness: Joe S. Phipps, O. D. Apple—9/15/37."

Joe S. Phipps, sheriff of Guilford County, corroborated Apple and testified, in part: "After they had found some whiskey I went down and stood and talked with defendant. . . . I asked Joe 'Why is it you persist in having liquor around your place, or handling whiskey?' He made the remark: 'In business,' he said, 'all filling stations in business are handling whiskey and if you don't you can't get along without it.'"

The defendant made numerous exceptions and assignments of error and appealed to the Supreme Court.

*Attorney-General McMullan and Assistant Attorneys-General Bruton and Willis for the State.*

*Younce & Younce for defendant.*

PER CURIAM. The defendant introduced no evidence and at the close of the State's evidence made a motion for judgment as in case of nonsuit. N. C. Code, 1935 (Michie), sec. 4643. The court below overruled this motion and in this we can see no error.

There was testimony that upon the premises operated by the defendant there was found more than a gallon of whiskey. He admitted that such whiskey belonged to him. The empty bottles strewn around the store constitute evidence that whiskey had been consumed upon the premises and tended to assist in establishing that the defendant possessed whiskey for the purpose of sale.

Chapter 49, Public Laws 1937, sec. 14, is as follows: "It shall not be unlawful for any person to transport a quantity of alcoholic beverages not in excess of one gallon from a county in North Carolina coming under the provisions of this act to or through another county in North Carolina not coming under the provisions of this act; *Provided,* said alcoholic beverages are not being transported for the purposes of sale, and provided further that the cap or seal on the container or containers of said alcoholic beverages has not been opened or broken. Nothing contained in this act shall be construed to prevent the transportation through any county not coming under the provisions of this act, of alcoholic beverages in actual course of delivery to any Alcoholic Beverage Control Board established in any county coming under the provisions of this act."

N. C. Code, 1935 (Michie), sec. 3379, in part, is as follows: "It is unlawful for any person, firm, association or corporation by whatever name called, to have or keep in possession, for the purpose of sale, any spirituous, vinous or malt liquors, and proof of any one of the following facts shall constitute *prima facie* evidence of the violation of this section. (1) The possession of a license from the Government of the United States to sell or manufacture intoxicating liquors; or (2) the possession of more than one gallon of spirituous liquors at any one time, whether in one or more places," etc. *S. v. Atkinson,* 210 N. C., 661.

Section 3411 (j) is as follows: "The possession of liquor by any person not legally permitted under this article to possess liquor shall be *prima facie* evidence that such liquor is kept for the purpose of being sold, bartered, exchanged, given away, furnished, or otherwise disposed of in violation of the provisions of this article. But it shall not be unlawful to possess liquor in one's private dwelling while the same is occupied and used by him as his dwelling only, provided such liquor is for the personal consumption of the owner thereof, and his family

residing in such dwelling, and of his *bona fide* guests when entertained by him therein."

The court below charged the law applicable to the facts. On the evidence the jury found defendant guilty. We see no error in the court below allowing the witness Apple to testify to matters complained of by defendant. We see no prejudicial or reversible error in the charge of the court below taken as a whole and not disconnectedly. On the record we see no new or novel proposition of law.

In the judgment of the court below we find

No error.